ORIGINAL

```
┌─────────────────────────────────┐
│      U.S. DISTRICT COURT        │
│  NORTHERN DISTRICT OF TEXAS     │
│            FILED                │
│                                 │
│         OCT 3 1 2013            │
│                                 │
│   CLERK, U.S. DISTRICT COURT    │
│   By_____      │
│              Deputy             │
└─────────────────────────────────┘
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY | § | |
| | § | |
| Plaintiff/Counterdefendant | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 3:11-CV-02524-M |
| PETRON ENERGY, INC. and W.P. OIL | § | |
| & GAS, LLC, | § | |
| | § | |
| Defendants/Counterplaintiffs. | § | |
| | § | |

---

**MEMORANDUM OPINION AND ORDER**

---

Before the Court is a Motion for Summary Judgment [Docket Entry #43] filed by Admiral Insurance Company ("Admiral") and a Motion for Partial Summary Judgment filed by Petron Energy ("Petron") and W.P. Oil & Gas, LLC ("WPO") (collectively "Defendants") [Docket Entry #47]. After considering the parties' arguments and applicable law, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary Judgment and DENIES Admiral's Motion for Summary Judgment.

Admiral issued a commercial general liability insurance policy (the "Policy") to Petron, an oil and gas well operator. In 2009, Petron and WPO, with which Petron does business, were sued in Oklahoma by two sets of plaintiffs who filed separate pleadings as a result of a multi-car accident (the "Oklahoma Litigation"). Brent Blagg sued individually and as a personal representative of the Estate of Amy Blagg, his wife, and

1

the Estate of K.B., his minor son, who were killed in the accident; and as a guardian of

T.B., his minor child, who was seriously injured. *See Pls.' Comp.* [Ok. Docket Entry #1]

No. 09-CV-703-CVE-FHM. Anna Marie Hobbs sued individually, for her serious

injuries, and as a personal representative of the Estate of Alfred Eugene Hobbs, her

husband, who was killed in the accident. *Pls.' Comp.* [Ok. Docket Entry #1] 09-CV-

00708-CVE-WHM. The plaintiffs in the Oklahoma Litigation alleged that Defendants

were liable because Charlie Strong, Jr., the driver of the car and Brett Radke, his

passenger, both of whom allegedly contributed to the accident, were within the course

and scope of their employment by Defendants when the accident occurred. *Pl.'s App.* 64-

73. In addition to WPO and Petron, both plaintiffs in the Oklahoma Litigation named as

defendants Jerry Line, as an employer of Radke and Strong, and as principal of WPO.

Plaintiffs also sued Strong. *Id.* at 67-77.

When Petron learned in June 2011 that it had been named as a defendant in the

Oklahoma Litigation, it notified its insurer, Admiral. Additional claims were asserted

against Petron in the Oklahoma Litigation, and Petron notified Admiral of these as well.

Admiral sued Petron for a declaratory judgment of non-liability in September 2011 [Dkt.

Entry #1]. Admiral later agreed to defend Petron from claims Petron tendered before

Admiral filed the declaratory judgment suit.

Initially, Petron sought a defense from Admiral under a now superseded pleading

in *Hobbs*, and later under *Blagg*, after the Amended Complaint in *Blagg* named Petron as

a defendant. *Defs.' App.* 179-187. In its declaratory judgment action, Admiral joined

WPO, after WPO claimed to be an Additional Insured under Petron's policy. In 2012, all

of the plaintiffs' claims against all defendants in the Oklahoma Litigation, except Petron,

were settled. *Defs.' App.* 305–06. Consideration for settlement of the claims against

WPO consisted of title to a building and land WPO owned (the "Sand Springs Property").

The remaining claims in the Oklahoma Litigation were stayed pending resolution of this

coverage action. *Id.*

Petron and WPO moved for summary judgment on their counterclaims for

declaratory judgment, breach of contract, and violations of the Texas Insurance Code.

Petron and WPO also seek reimbursement from Admiral, pursuant to an indemnity clause

in a contract between Petron and WPO, by which Petron owes WPO the costs of WPO's

defense in the Oklahoma Litigation, as well as reimbursement for the value of the Sand

Springs Property. Admiral seeks summary judgment on its claim for declaratory

judgment and on the counterclaims of Petron and WPO, arguing that (1) Admiral owes

no duty to defend or indemnify Petron or WPO, and (2) Petron and WPO's counterclaims

against Admiral for declaratory judgment, breach of contract and violations of the Texas

Insurance Code fail as a matter of law.

## II. Summary

The *Hobbs* and *Blagg* Complaints in the Oklahoma Litigation claim that one or

both of the individual defendants willfully and recklessly drove or caused to be driven a

motor vehicle while intoxicated, and recklessly and negligently passed in a no-passing

zone without sufficient clearance. The *Blagg* pleading includes the following:

> Defendants owed a care of duty (sic) to operate the motor vehicle safely and
> breached that duty when Defendants recklessly and negligently caused the deaths
> and injuries of Plaintiffs. Defendant Strong passed in a no-passing zone, a
> violation of Oklahoma law.
>
> On May 9, 2009, Defendant Strong was acting as agent and/or employee of
> Defendant Jerry Line, WP Oil and Gas, LLP; and/or Petron Energy, Inc. and was
> within the scope of his employment/agency when the above-referenced deaths and

3

injuries occurred. Defendant Jerry Lines is the owner of the automobile driven by Strong.

*See Pl.'s Mot.* ¶ 16. The *Hobbs* suit claims:

Defendants owed a duty of care to operate the motor vehicle safely and breached that duty.

Defendant Strong and Brent Radke were at the time of the incident acting within the scope of employment with Defendants Line, W.P. Oil and Gas, L.L.C., and Petron Energy, Inc. Defendant Strong was paid for his services, directly and indirectly, by Defendants Line, W.P. Oil and Gas, L.L.C. and Petron Energy, Inc.

Defendants Line, W.P. Oil and Gas, L.L.C., and Petron Energy, Inc. were joint venturers in utilizing Jerry Line's fleet of collectible automobiles, participation in car shows, and entertainment associated with car shows to promote their businesses, and therefore, all stand liable to Plaintiff.

On May 9, 2012, Admiral accepted Petron's defense in the *Blagg* case, subject to a reservation of rights, but denied coverage for *Hobbs* because Admiral claims the pleadings did not allege an "occurrence" under the Policy because the driver, Strong, was intoxicated. *Defs.' App.* 14, 236-37, 298. However, Admiral has not paid Petron for any legal expenses it incurred in the defense of *Blagg. Defs.' App.* 261. Admiral's claims adjuster, Ed Brennan, testified that Admiral was offering to pay for that defense only if ordered to do so by the Court. *See Defs.' App.* 30–31. In a letter dated May 9, 2012 to WPO, Admiral denied that WPO was entitled to coverage as an "Additional Insured" under the policy, arguing that the *Blagg* and *Hobbs* Complaints did not allege facts that would make WPO an Additional Insured. *Defs.' App.* 240-46.

### III. Summary Judgment Standard

A court should grant summary judgment when the "pleadings, discovery, disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Lifecare*

4

*Mgmt. Servs., LLC v. Ins. Mgmt. Adm'rs, Inc.*, 761 F. Supp. 2d 426, 432 (N.D. Tex. 2011) (Lynn, J.). In considering a motion for summary judgment, the facts are viewed in the light most favorable to the non-movant. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549–50 (5th Cir. 2012).

A party may seek partial summary judgment on liability issues while reserving the issue of damages or attorneys' fees for another day. FED. R. CIV. P. 56(a) (authorizing summary judgment on part of claims or defenses); *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F. Supp. 2d 844, 849 n.4 (N.D. Tex. 2008) (Fitzwater, J.) (noting that an insured could seek partial summary judgment on liability issues and reserve the right to seek a factual determination of issues related to damages); *see also Teamsters Local Unions v. Braswell Motor Freight Lines, Inc.*, 395 F.2d 655, 655 (5th Cir. 1968). Partial summary judgment on issues of law is particularly appropriate in a case involving an insurer's duty to defend. *See ABC Distrib., Inc. v. Lumbermens Mut. Ins. Co.*, 646 F.2d 207, 208 (5th Cir. 1981); *see, e.g., Trammell Crow*, 643 F. Supp. 2d at 855–56 (awarding summary judgment on the insured's claim for declaratory judgment that the insurance company had a duty to defend). When evaluating insurance policies, Texas courts apply the rules of construction generally applicable to contracts. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004).

### IV. Eight Corners Rule

To determine whether an insurer owes a duty to defend, Texas courts apply the "eight-corners" rule, also referred to as the "complaint allegation" rule. *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682–83 (5th Cir. 2012). Under this rule, the insurer has a duty to defend if the complaint

against its insured alleges facts that, if true, are *potentially* within the policy's coverage. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex. 2006). Thus, the duty to defend is generally determined solely on the basis of two documents— allegations in the complaint, without regard to their truth or falsity, and the language of the insurance policy. *GuideOne Elite,* 197 S.W.3d at 308; *King,* 85 S.W.3d at 187.

Before the eight-corners rule is applied, the status of any "additional insured" must first be determined. *Gilbane Bldg. Co. v. Admiral Ins. Co.,* 664 F.3d 589, 594 (5th Cir. 2011); *see also ACE Am. Ins. Co. v. Freeport Welding & Fab., Inc.,* 699 F.3d 832, 839 (5th Cir. 2012) (whether a party "qualifies as an additional insured under the policy" is a threshold question). The eight-corners rule does not preclude consideration of extrinsic evidence to determine whether a party qualifies as an insured under the policy. *VRV Dev., L.P. v. Mid-Continent Cas. Co.,* No. 3:09-CV-1382, 2010 U.S. Dist. LEXIS 8982, *7–9 (N.D. Tex. Feb. 3, 2010) (Lynn, J.) (treating additional insured status as an exception to the eight-corners rule, following *Ooida Risk Retention Group, Inc. v. Williams,* 579 F.3d 469, 475–76 (5th Cir. 2009)).

## V. Analysis

### A. "Additional Insured"

As urged by Defendants in their Motion for Partial Summary Judgment, the Court finds that WPO is an Additional Insured under the Policy for the claims stated against it in the *Hobbs* and *Blagg* Complaints in the Oklahoma Litigation.

Defendants contend that as a consequence of the joint venture agreement between Petron and WPO, WPO is an Additional Insured, pursuant to the "Additional Interests— Oil or Gas Lease Operators" endorsement of the Policy. *Defs.' App.* 134. Admiral argues

that WPO is not an Additional Insured because WPO owns an *operating* working interest

in the Petron wells, meaning the endorsement does not apply. *Pl.'s Mot.* at 16. The

relevant endorsement in the policy provides:

> PERSONS INSURED INCLUDE:
>
> (A) Any Co-owner, joint ventures, or mining partners having a
> non-operating working interest with the Named Insured in oil
> or gas operations, where the Named Insured is operator.

*Defs.' App.* 134. The Policy defines "Non-Operator" as "a party having a working interest

ownership in the insured well(s) other than the operator of the insured well(s)." *Pl.'s App.*

53.

Well operators sometimes subcontract hands-on work to other entities. *See Stable*

*Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327 (Tex. App.—Austin 2001, no

pet.) ("CRB delegated the operation of the well to K–N Operating on a subcontract

basis."). Here, Petron subcontracted with WPO to provide services for wells where

Petron was the operator. *See, e.g., Pl.'s App.* 98-99. The contract between Petron and

WPO provides that Petron is in a joint venture with WPO, whereby WPO has a "*non-*

*operating* working interest . . . in oil or gas operations where the Named Insured [Petron]

is operator." *Defs.' App.* 46–47 (emphasis added). The joint venture agreement provides

that WP's services include "re-working, recompletion, completion, daily maintenance

and production, and any other service that may be required," that such a relationship

formed was a joint venture with Petron, and that WP would not acquire an ownership

interest in Petron. *Defs.' App.* 91.

The contract between Petron and WPO states that Petron is the sole "operator"

and retained a 25% working interest. In his deposition, Jerry Line testified that the wells,

7

formerly under WPO's operating license were transferred to Petron's operating license, obligating Petron to control the financing and financial decisions involved with the operations. *Defs.' App.* 42-48. Admiral's argument that WPO is too "heavily involved with operations" to have coverage lacks merit, and Admiral cites no case law to support its position. The contract provides that WPO is a non-operating working interest holder, and that satisfies the requirements of the endorsement.

Additionally, the joint venture and indemnity agreement between Petron and WPO, dated January 11, 2007, explicitly provides for indemnification:

> Petron Energy hereby agrees to indemnify W.P. Oil and Gas, and Jerry W. Line, Sr. as a limited agent on behalf ot Petron, against expenses, including attorney's fees, judgments, fines and amounts paid in settlement…in connection with any suit brought by a third party as a result of actions taken on behalf of Petron Energy by W.P. Oil and Gas, and/or Jerry W. Line, Sr. in good faith furtherance of Petron's business operations.

*Defs.' App.* 89 (Letter Memorializing Joint Venture Agreement, § 5).

The joint venture agreement between Petron and WPO is an insured contract, per the "Definitions" of the Policy in Section 9(f):

> 'Insured contract' means: (f) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Defs' App.* 19. Petron agreed to assume to liabilities for WPO, and the consequence of this "insured contract" status is that it triggers an exception to the Policy's exclusion for "contractual liability" in Section I.A.2:

> Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

    (a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

    (b)     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.* at 103.

In sum, the contract between Petron and WPO, by which Petron (the Named Insured) assumed the tort liability of another (WPO) to pay for bodily injury or property damage to a third person is an "insured contract" under the Policy with Admiral. *Defs.' App.* 111. Therefore, Defense costs incurred by Petron in complying with its indemnity obligations to WPO are recoverable from Admiral under the Policy. While this provision alone does not make WPO an Additional Insured under the policy, the practical effect is similar. *See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 841 (5th Cir. 2012).

In *Freeport Welding*, three "additional insured" endorsements were included in the policy issued to Brand Energy: (1) "Any person or organization whom [Brand Energy has] agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss"; (2) "Any person or organization [Brand Energy] is required by contract to provide said coverage"; and, (3) "Any Owner, Lessee or Contractor whom [Brand Energy has] agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss." 699 F.3d at 841.

Brand and Freeport entered a venture to build an energy vessel, and the purchase agreement between the parties stated that Brand would provide indemnification to Freeport if certain events occurred:

> INDEMNIFICATION. Seller shall assume the sole responsibility for any and all damage or injury (including death) to any and all persons (including, but not limited to employees of Seller or Buyer) and to all property associated with the performance of the obligations under this Order or any act or omission of Seller, and shall defend, indemnify and save harmless Buyer from and against any and all claims, liabilities, expenses (including attorneys' fees), fines, penalties, and damages except for such claims, liabilities, etc., caused by the sole negligence of Buyer.

*Id.* at 837. When several workers were injured during the project, they sued Brand and Freeport. Freeport sought status as an "additional insured" under Brand's policy, pointing to the purchase order, but the insurer denied a duty to defend. The Fifth Circuit held that Freeport was an additional insured for the period after the purchase order:

> A plain reading of the purchase agreement indicates that it applies to all purchase orders entered into by Brand Energy and Freeport during its term of coverage. Accordingly, we conclude that Freeport qualified as an additional insured under Brand Energy's insurance policy with ACE for all purchase orders entered into between Freeport and Brand Energy during the 2009 purchase agreement's term of coverage, *i.e.,* from January 1, 2009 through the end of the term of coverage.

*Id.* at 841-42.

Here, in the context of the oil and gas operations covered by the Policy, Petron could indemnify its co-venturers, and since it did so, it has coverage under the "insured contract" provision as a matter of law.

**B. "Classification Limitation"**

As urged by Defendants in their Motion for Partial Summary Judgment, the Classification Limitation in the Policy does not absolve Admiral from a duty to defend Petron and WPO in the Oklahoma Litigation.

Whether alleged liability "arises out of" particular operations may be determined by extrinsic evidence, where it "does not implicate the merits of the underlying lawsuit." *Roberts, Taylor & Sensabaugh, Inc. v. Lexington Ins. Co.*, No. H-06-2197, 2007 U.S. Dist. LEXIS 75075, *16–20 (S.D. Tex. Oct. 9, 2007) (citing, *inter alia*, *GuideOne Elite*,

197 S.W.3d at 309–10; *Highland Park Shopping Village v. Trinity Universal Ins. Co.*, 36

S.W.3d 916, 917–18 (Tex. App.—Dallas 2001, no pet.)). Determining whether the claims

in the Oklahoma Litigation arose from operations by Petron and WPO under certain

classifications is relevant to the issue of coverage and is, like the additional insured issue,

not controlled by the eight-corners rule. The Policy's "Classification Limitation"

endorsement states:

> This insurance applies to "bodily injury", "property damage", "personal
> injury" or "advertising injury" not otherwise excluded herein, arising out of
> only those operations which are described by the classification shown on the
> Commercial General Liability Coverage Declarations, its endorsements and
> supplements.

*Pl.'s App.* 10. Therefore, coverage is limited to injuries that arose out of specific

classifications of operations of the insured, shown on the declarations page of the Policy:

> OIL OR GAS LEASE OPERATIONS-(PRODUCTS/COMPLETED
> OPERATIONS INCLUDED IN GENERAL AGGREGATE LIMIT)
>
>> PRODUCING WELLS
>> NEW WELLS TO BE DRILLED SHUT-IN OR TEMPORARILY
>> ABANDONED WELLS
>> SALT WATER DISPOSAL OR SALT WATER INJECTION
>> WELLS NOT FOR PROFIT OR PUBLIC ACCESS, EXCLUDING
>> DISPOSAL OF HAZARDOUS WASTES OR MATERIALS
>
> SUB-CONTRACTED WORK TO ADEQUATELY INSURED
> INDEPENDENT CONTRACTORS, OIL OR GAS WORK IN THE FIELD
>
> OIL OR GAS WELLS-NONOPERATING WORKING INTEREST ONLY,
> EXCLUDING ANY ACTIVITIY (sic) AS AN OIL OR GAS LEASE
> OPERATOR, (PRODUCTS/COMPLETED OPERATIONS INCLUDED IN
> THE GENERAL AGGREGATE LIMIT) PRODUCING WELLS

*Pl.'s App.* 8.

According to Admiral, coverage is barred, and no duty to defend is triggered,

because the *Blagg & Hobbs* plaintiffs did not expressly allege that their injuries arose out

11

of one or more of the above classifications. In the *Hobbs* pleading, it is alleged that "Defendant Jerry Line's fleet of collectible automobiles, participation in car shows, and entertainment associated with car shows was used to promote the businesses of Defendant Line, W.P. Oil and Gas, L.L.C., and Petron Energy, Inc." *Defs.' App.* 200. Admiral argues this broad allegation is insufficient to meet the Classification Limitation's requirement that the "bodily injury" arise out of the specified operations because the *Hobbs* pleadings, taken as a whole, do not suggest the car accident arose out of "Oil or Gas Lease Operations." The Court disagrees.

Admiral relies on *Essex Ins. Co. v. Davis,* 2009 U.S. Dist. LEXIS 69028 (N.D. Tex. 2009) (Sanderson, M.J.), where the court held that a general liability carrier had no duty to defend its insured due to the application of a Classification Limitation endorsement in the policy. The endorsement stated that "[t]he coverage provided by this policy applies only to those operations specified in the application for insurance on file ... and described under the 'description' or 'classification' on the declarations of the policy." *Id.* at *9. The policy described the insured's business as "residential roofing." *Id.* Based on these provisions, and the dictionary definition of "residential," the court held that the insured's roofing work on a synagogue building was "outside the scope" of the insurance policy. *Id.* at *10.

The phrase "arising out of" has been interpreted quite broadly by the Texas Supreme Court. *Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 203 (Tex. 2004) ("arise out of" means there is simply a causal connection or relation) (internal citations omitted). Injuries attributed to actions to promote business operations could be considered "arising out of" those operations. The Court is not to "imagine facts to defeat

coverage" when assessing the duty to defend. *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 623 (E.D. Tex. 2003).

Here, the Complaints broadly allege that Strong was acting as an employee or agent of WP and Petron, and that the car Strong was driving was "used to promote the businesses" of WP and Petron. The broad classification codes in the "Classification Limitation" include Oil or Gas Lease Operations, Sub-contracted work for Oil or Gas work in the Field, and Oil or Gas Wells—Non-operating Working Interest. *Defs.' App.* 131. Injuries attributed to actions that "promote" those business operations can be covered by the Classification Limitation.

### C. Whether the Accident is an "Occurrence" Under the Policy

As urged by Defendants in their Motion for Partial Summary Judgment, the accident was an "occurrence" under the Policy.

The Policy, like most general liability policies, provides coverage for liability arising from bodily injury or property damage caused by an "occurrence" within the coverage territory and policy period. An "occurrence" is defined as "an accident." *Defs.' App.* 112. Admiral argues, however, that the accident allegedly caused by Strong was not an occurrence, because it was not an accident, but rather "the natural and probable consequence of driving while under the influence of alcohol." *Defs.' App.* 189. Whether an injury is the "natural and probable consequence" of conduct in particular circumstances requires a detailed examination of the facts. *See Puget Plastics*, 532 F.3d at 401–02.

Admiral's assertion that the accident alleged in the *Hobbs* and *Blagg* Complaints is not an "accident", and thus not an "occurrence" under the Policy flies in the face of the

13

plain meaning of the words. Admiral cites no authority for its position, which amounts to an argument that accidental injuries allegedly attributed to driving while intoxicated can *never* be an occurrence, and thus can *never* trigger a duty to defend. That conclusion would eliminate the protection of liability insurance for all accident victims where alcohol or drugs are allegedly involved. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831–33 (Tex. 2009) (rejecting insurer's argument that injuries resulting from insured's high-speed police chase were excluded as intentionally caused). The policy in *Tanner* excluded coverage for any injury caused intentionally, "including willful acts the result of which the insured knows or ought to know will follow." *Id.* at 831. The Texas Supreme Court nevertheless held that reading this language to exclude reckless acts where intent to injure could not be found "would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance." *Id.* The similar argument made by Admiral here is rejected.

### D. Duty to Defend

Admiral has a duty to defend Defendants in the Oklahoma Litigation. The Court is to resolve all doubts regarding the duty to defend in favor of the duty. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

If the underlying complaint alleges at least one claim that triggers the duty to defend, the insurer must defend the entire suit. *See Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) ("Whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend, as long as the complaint alleges at least one cause of action within the coverage of the policy."); *GuideOne Elite*,

197 S.W.3d at 314 (Hecht, J. concurring) ("GuideOne concedes that if it has a duty to defend any of Doe's claims, it has a duty to defend them all.").

The first issue relates to coverage based on the allegations of agency and employment. In the *Hobbs* Complaint, Strong and Radke are alleged to have been acting "within the scope of employment" for Jerry Line, WPO and Petron. Strong was allegedly paid for his services by both WPO *and* Petron. *Hobbs Compl.* ¶ 43-44. Additionally, Petron and WPO are alleged to have been joint venturers in utilizing Line's fleet of cars to promote their businesses. *Id.* ¶ 47. The *Blagg* Complaint alleges that Strong was acting as an "agent *and/or* employee" of Line, WPO and Petron, and was "acting within the scope of his employment" when the accident occurred. *Blagg Compl.* ¶ 24 (emphasis added). Because of the use of the word "or" in the *Blagg* Complaint, the plaintiffs allege that Strong was an employee for all or some of the entities. Further, the *Blagg* Complaint also claims "Defendants owed a duty of care to operate the motor vehicle safely and breached that duty when Defendants recklessly and negligently caused the deaths and injuries of Plaintiffs." *Id.* ¶ 20. In other words, WPO and Petron are alleged to be jointly liable for the actions of the listed persons, employees or agents who may have worked for one or both companies.

The next issue relates to the Auto Exclusion in the Policy. The Auto Exclusion states there is no coverage for injuries "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to *any insured*." *Defs.' App.* 104 (emphasis added). In the Policy, "insured" is defined as "any person or organization qualifying as such under Section II, 'Who is An Insured.'" *Defs.' App.* 102. Petron is the Named Insured, and as discussed above, WPO is an Additional

Insured, by virtue of the "Additional Interests—Oil or Gas Lease Operators" provision. *Defs.' App.* 96, 134. Therefore, the exclusion would seemingly apply to both the Named Insured—Petron—*and* any Additional Insured—WPO. This, however, does not end the matter, as the Auto Exclusion must also apply to the *employees* of both the Named Insured and Additional Insured to bar coverage. The "Who is an Insured" section of the Policy specifies which *employees* are included as insureds:

> *Your* "volunteer workers" only while performing duties related to the conduct of *your* business, or *your* employees, other than either *your* "executive officers" . . . but only for acts within the scope of their employment by *you* or while performing duties related to the conduct of *your* business.

*Defs.' App.* 108 (emphasis added). The Policy defines "Your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." *Defs.' App.* 102. As such, when the Policy refers to "your" employees covered by the Auto Exclusion, it means *Petron's* employees, working on behalf of the Named Insured. Because the employee provision is limited to Petron, employees of WPO (as the Additional Insured, not the Named Insured) are not subject to the Auto Exclusion. Similarly, employees of Jerry Line, a WPO principal and the owner of the vehicle that caused the accident, are not included as "any insured" in the Auto Exclusion.

Had Admiral intended to include the employees of an Additional Insured within the Auto Exclusion, the language of the Policy could have so stated. As is, the Auto Exclusion, by its terms, applies only to the *Named Insured*—Petron and its employees— and the *Additional Insured,* WPO, but not to employees of the Additional Insured. As a result, the Oklahoma Litigation, which includes claims against persons alleged to be WPO employees, is potentially covered by the Policy.

16

In a similar case, the Eastern District of Louisiana held that "Louisiana case law finds legal consequences when an insurance contract limits coverage and exclusions to a named insured." *Scottsdale Ins. Co. v. Gulf Sea Temporaries, Inc.*, 1999 U.S. Dist. LEXIS 3198, at *18 (E.D. La. Mar. 11, 1999). In *Gulf Sea*, the insurance policy defined "You" as the "Named Insured." *Id*. at *17. The policy specifically distinguished between the *named insured*, "you", and *an insured*, which included the employees of the named insured. The policy excluded punitive damages from conduct by "you"—the named insured, but employees were not included in "you". The court held punitive damages based on vicarious liability of the employees were not excluded by the policy and were thus within the scope of coverage. Id. at *17-18. *Accord Deville v. Conmaco/Rector, L.P.*, 2010 U.S. Dist. LEXIS 102892, at *12-14 (E.D. La. Sept. 28, 2010).

Although Defendants raised the issue of WPO employees not being subject to the Auto Exclusion (*Defs.' Mot.* 25) and cited the analogous Louisiana cases, Admiral declined to address those arguments in its Response to Defendant's Motion [Docket Entry #54] and its Reply on its own Motion [Docket Entry #62].

An insurance policy that contains provisions applying only to the named insured should be narrowly interpreted to apply only to the named insured. *Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins*. Co., 234 F. App'x 190, 193 (5th Cir. 2007) ("We take as a given that 'you' in this policy only means [the named insured], according to the policy's definition of that word."). Furthermore, if the court finds an ambiguity (i.e., the parties offer two reasonable, but conflicting, constructions), the court must adopt the construction most favorable to the insured. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). As to exclusionary clauses, the preference for the insured is even

17

stronger: "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991).

Typically, a party seeking to establish ambiguity under a written contract must specifically plead such ambiguity. *Crozier v. Horne Children Maint. & Educ. Trust*, 597 S.W.2d 418, 421 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.). While Defendants dispute the meaning of the relevant provisions in the contract, they do not specifically plead ambiguity. However, the Texas Supreme Court has held that a court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993).

The parties briefed extensively whether the acts of an employee are necessarily those of the employer, either due to *respondeat superior* or vicarious liability. *See Roman Catholic Diocese of Dallas, ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133 S.W.3d 887, 895 (Tex. App.--Dallas 2004, pet. denied); *Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co.*, 233 S.W.3d 524 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). The parties also briefed cases that applied auto exclusions to the actions of employees. *See Medical Staffing Network, Inc. v. New Hampshire Ins. Co.*, 2001 WL 1147447 (S.D. Fla. June 15, 2001); *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp 413, 423 (E.D. Pa. 1996). The Court need not engage in an extensive analysis of those cases, because the language and terms of Admiral's Policy means that employees of

18

the Additional Insured, WPO, are not encompassed by the Auto Exclusion. Thus, whether or not the actions of Strong and Radke turn out to be the actions of WPO is immaterial, and a lengthy discussion of the matter would be academic.

The Complaints in the Oklahoma Litigation allege Strong and Radke *were* acting as agents and/or employees of WPO, and the terms of the Policy do not include employees of WPO within the Auto Exclusion. When applying the eight-corners rule, the Court must look to the pleadings and the language of the Policy, and because the Complaints in the Oklahoma Litigation are *potentially* covered, as a matter of law, Admiral has a duty to defend.

### E. Admiral's Reservation of Rights

The Court must also address what rights Admiral reserved after agreeing to defend the *Blagg* case. Defendants argue that by agreeing to defend a portion of the case, with a reservation of rights, Admiral is now bound to defend the entire case—both the *Blagg* and *Hobbs* Complaints that were consolidated in the Oklahoma Litigation. Furthermore, Defendants contend that Admiral's initial agreement to defend a part of the case shows that Admiral knew there was a duty to defend. Admiral's claims adjuster contends that Admiral's agreement to defend against *Blagg* only meant it would do so if ordered by the Court, and the offer was merely a precautionary measure. *Defs.' App* 30–31. The Court rejects Defendants' broad position that would render Admiral's reservation of rights meaningless. While the Court finds that Admiral has a duty to defend, it is because of the particular circumstances of the pleadings in the underlying Oklahoma Litigation and relevant language in the Policy—not because of Admiral's initial agreement to defend one of the cases under a reservation of rights.

Along these same lines, Defendants argue that if an insurer's agreement to defend under a reservation of rights creates a conflict of interest, an insurer must pay attorneys' fees of the insured's independently-retained attorney. *See, e.g., Coats, Rose, Yale, Ryman & Lee, P.C. v. Navigators Specialty Ins. Co.*, 830 F. Supp. 2d 216, 218–19 (N.D. Tex. 2011) (Fitzwater, J.), *aff'd*, No. 12-10055, 2012 U.S. App. LEXIS 21350 (5th Cir. 2012) (per curiam). That holding is inapposite to this case. Here, Admiral agreed to defend the lawsuit subject to a reservation of its rights, and that in and of itself does not create a conflict of interest. To accept Defendants' argument would eliminate an insurer's ability to reserve its rights.

### F. Duty to Indemnify

As to the duty to indemnify, including WPO's claim for reimbursement of the value for the Sand Springs Property, there remain outstanding factual issues that make a ruling on indemnification premature.

Admiral argues that in a deposition, Petron's corporate representative, Floyd Smith, testified that (1) the car accident had nothing to do with Petron's duties as a well operator, (2) Petron's operations do not involve car shows, (3) Petron does not market or promote its business in any way through classic cars or car shows, (4) Jerry Line's collectible cars have nothing to do with Petron's business, but was Line's hobby, and (5) Petron had no involvement with any car shows where Mr. Line showed his cars. *Def.'s App.* 100-102.

The duty to indemnify requires an insurance company to pay judgments on covered claims of the insured. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). As Admiral notes *(Pl.'s Mot.* at 16), the duty to indemnify is

triggered by the actual facts of the underlying suit "and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Id.* at 253. Here, the underlying lawsuits against Petron have not yet been resolved, so it is premature for the Court to now decide the duty to indemnify. *Peachtree*, 647 F.3d at 255. The Texas Supreme Court has held that even if a court determines there is no duty to defend, the duty to indemnify may remain in issue pending a determination in the underlying suit. *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744-45 (Tex. 2009) ("It may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit.").

In the underlying suit, defendants' motions for summary judgment were denied. *Defs.' App* 25. The Oklahoma court held that "[t]here is a genuine dispute of material fact as to whether Strong was an employee of Line, WP, and/or Petron on May 9, 2009 and, if Strong was an employee, whether he was acting within the scope of his employment at the time of the accident." *Defs.' App.* 20. Resolution of this issue is important to resolving Admiral's duty to indemnify. And of course, the plaintiffs in the Oklahoma Litigation may be allowed to amend their pleadings and prove grounds for liability not yet articulated in the pleadings. Therefore, the duty to indemnify can only be resolved after the disposition of the Oklahoma Litigation. As a result, the Court denies this portion of Admiral's Motion.

### G. Texas Insurance Code and Breach of Contract.

Defendants' claims against Admiral for alleged violations of the Texas Insurance Code are DENIED. The Court finds there are disputed fact issues regarding the

reasonableness of Admiral's decision regarding coverage and alleged delays in communicating its decision. Additionally, Defendants' claims of an independent injury due to Admiral's conduct are too speculative at this juncture absent further documentation. Thus, summary judgment is inappropriate at this time.

Defendants argue that Admiral breached the Texas Insurance Code by wrongfully denying coverage and delaying its coverage decision by an unreasonable amount of time, which allegedly caused Defendants to suffer higher litigation expenses and a prolonged mediation. *See Defs.' App.* 9-10, 39. Admiral responds that (1) because it has no duty to defend or indemnify Defendants under the Policy, it cannot be liable for breaches of the Insurance Code, as a matter of law; and (2) Defendants fail to prove an independent injury from any alleged delays.

### 1. Alleged Independent Injury

There can be no recovery against an insurer for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of that which would have resulted from a wrongful denial of policy benefits. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198-99 (Tex.1998). Defendants argue they have incurred significant attorneys' fees and expenses in the coverage dispute initiated by Admiral. *Defs.' App.* 250, 253. Admiral asserts there is no evidence of any injury suffered by Defendants based on the amount of time it took Admiral to make a coverage decision. *Pl.'s Resp.* at 17. Defendants claim their alleged injuries are separate and apart from the loss of Policy proceeds, justifying Defendants' statutory claims. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs.*, 612 F.3d 800, 808 (5th Cir. 2010) (noting that attorneys' fees incurred in another case might meet the separate injury requirement).

Defendants further argue that due to Admiral's tactics in this coverage dispute, they suffered significantly higher litigation expenses. *Defs.' App.* 10, 39. Defendants speculate that had Admiral communicated its acceptance of the *Blagg* defense prior to May 2012, and closer to the September 2011 tender, this coverage dispute would have been very different. The Court finds this claim far too speculative to constitute an independent injury. Whether or not Admiral agreed to defend Petron, Defendants would have nevertheless had to hire counsel to defend the Oklahoma Litigation. There is insufficient evidence to support Defendants' claim of a separate and independent injury.

Defendants also argue that mediation between the parties in the underlying case also might have had a different outcome if Admiral acted sooner. The parties in the Oklahoma Litigation attended mediation on February 22, 2012, when Admiral had disclaimed any duty to indemnify or defend against the *Hobbs* claims, but had not stated a position on the *Blagg* suit. *Defs.' App.* 9. Additionally, Admiral had not stated any position concerning WPO's status as an Additional Insured as of the mediation. *Id.* Only after the failed mediation did Admiral state a position on the *Blagg* Complaint. *Id.* Defendants allege that if Admiral had accepted the *Blagg* defense before mediation, it could have taken a more active role in the mediation, and at a minimum, the plaintiffs would have known Admiral's position in formulating their settlement posture. *Id.* Again, the Court finds this claim too speculative to constitute an independent injury.

In his deposition, Line testified that aside from the policy proceeds WPO believes it is entitled to, WPO has suffered no damages it contends are Admiral's fault. *Pl.'s App.* 132-133. Petron's corporate representative, Floyd Smith, testified that aside from what it contends it is owed under the Policy, Petron's only damage is the loss of Mr. Smith's

time dealing with the litigation, which could be better spent doing other things. Smith (1) said he could not put a dollar figure on that alleged lost time, (2) testified that he had never attempted to value it, (3) testified that there is no documentation of his lost time, (4) and testified he had not given it any consideration prior to his deposition. *Id.* at 109-10.

### 2. TEX. INS. CODE § 541.060(a)(7) ("refusing to pay a claim without conducting a reasonable investigation with respect to the claim")

Defendants claim Admiral failed to conduct a reasonable investigation of their claim before denying coverage. However, Admiral argues no additional investigation was required, because that issue must be determined under the eight-corners rule. *Id.* at 14–15. While Admiral's position is incorrect, Defendants' claims fail because Admiral's tactics were not unreasonable as a matter of law.

In *Gilbane*, the Fifth Circuit held that additional insured status must be determined before the eight-corners rule is applied. 664 F.3d at 594. Admiral admits it conducted no investigation to determine whether WPO satisfied the criteria to be an Additional Insured under the Policy. *Defs.' App.* 14–15, 22–23. Nor did Admiral investigate the underlying facts before asserting that the injuries alleged in the Oklahoma Lawsuit were "expected or intended" by Petron or WPO. *Id.* at 14–15, 22–23. However, Admiral had an arguably reasonable—albeit incorrect—basis for denying coverage based on the Auto Exclusion. Admiral's position is that the Auto Exclusion precludes coverage for Petron or WPO—even if WPO is determined to be an Additional Insured. Therefore, its coverage decision was not unreasonable, despite the lack of an additional investigation on WPO's status. Similarly, whether or not the injuries were "expected or intended" and therefore an "occurrence" under the policy would not have affected Admiral's

determination that the Auto Exclusion barred coverage. Even if Admiral determined the accident *was* an "occurrence", its position under the Auto Exclusion would have remained the same.

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987)). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* (citations omitted). Furthermore, "a bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim," and even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith. *Id.*

A bad faith inquiry focuses on the reasonableness of the insurer's conduct in rejecting or delaying payment of the claim, which is determined by analyzing the facts available to the insurer at the time of denial. *See Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990); *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 49 (Tex.1997). An insurer must conduct a reasonable investigation, and only after such an investigation can it escape liability for bad faith refusal of a "questionable" claim. *United Servs. Auto. Ass'n v. Croft,* 175 S.W.3d 457, 471 (Tex.App.—Dallas 2005, no pet.). Whether an insurer has a reasonable basis for denying a claim is determined from the facts the insurer knew or should have known at the time it denied the claim. *Id.* An insurer may not, however, choose to avoid fully investigating an insured's claim "so as to

prevent liability from ever becoming reasonably clear." *Bryan v. Zenith Ins. Co.*, 2001 Tex. App. LEXIS 4974, at *11 (Tex. App.—Austin July 26, 2001, no pet.). Furthermore, an insurer breaches its duty of good faith if it denies a claim and its liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998). Thus, an insurer's duty to conduct a reasonable investigation is intertwined with the "reasonableness of its basis for denying the claim." *AIG Aviation, Inc. v. Holt Helicopters, Inc.*, 198 S.W.3d 276, 285 (Tex. App.—San Antonio 2006, pet. denied).

This court has also recognized that "[i]t is possible to breach the good faith duty in the processing of a claim but not in the coverage decision." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:06-CV-1578-D, 2009 U.S. Dist. LEXIS 89359, at *88 (N.D. Tex. Mar. 30, 2009) (Fitzwater, J.), *aff'd on other grounds*, No. 11-10649, 2013 U.S. App. LEXIS 3741 (5th Cir. Feb. 22, 2013). The court even provided an example: if an insurer makes a misrepresentation of the policy, an insurer's "reasonable basis" for denying recovery would not preclude recovery under the Insurance Code for such a misrepresentation. *Id.* at *84-85 n.28.

Here, there is insufficient evidence that Admiral misrepresented the policy or lacked a reasonable basis for denying the claim. Therefore, Defendants' contentions on this matter cannot be resolved as a matter of law in their favor.

### 3. TEX. INS. CODE § 541.060(a)(4) ("failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder")

Defendants argue that Admiral's delays throughout its handling of these claims were unreasonable as a matter of law. Specifically, they identify the following, which

26

Admiral did not dispute in its Response to Defendants' Motion for Partial Summary Judgment:

(a)     Admiral waited 3½ months (June 15–September 27, 2011) to give Petron any substantive response to its notice of the *Hobbs* Complaint, then disclaimed any duty to defend or indemnify. *Defs.' Mot.* at ¶ 11.

(b)     Admiral waited over 7 months (September 22, 2011–May 9, 2012) to give Petron a "reservation of rights" letter concerning the virtually identical *Blagg* Complaint. *Defs.' Mot.* at ¶ 43.

(c)     Admiral waited 3½ months (January 27–May 9, 2012) after receiving WPO's notice of additional insured status, and 2½ months after the Oklahoma settlement conference, to give WPO any substantive response, then disclaimed any duty to defend or indemnify based solely on the pleadings. *Def's Mot.* at ¶¶ 43-45.

These delays occurred as the Oklahoma Litigation was proceeding toward a trial setting. Admiral received notice of all claims asserted against Petron and WPO in that action, as well as the pertinent rulings of the court, well in advance of the settlement conference in February 2012. By choosing not to accept any duty to defend or to participate actively in the settlement conference, the insurer left the insureds to defend their position without assistance. *See, e.g., Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 190-91 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (insurer must decide coverage issues and state its position within a reasonable time).

While the Court finds that Admiral had a duty to defend, and that Admiral's delays created difficulties for Petron and WPO, it does not necessarily follow that Admiral violated Section 541.060(a)(4) as a matter of law. *See State Farm Lloyd's Ins. Co. v. Ashby Auto. Supply Co.*, 1995 Tex. App. LEXIS 3346, at *23–30 (Tex. App.—Dallas 1995, writ denied) (affirming jury finding of bad faith and unreasonable delay

when State Farm did nothing for approximately five weeks after liability was reasonably clear). These issues, as in *Ashby*, are to be decided by a jury.

Importantly, the Fifth Circuit has explained that "[t]here can be no recovery for extracontractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits." *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002). In the *Parkans Int'l* case, the Fifth Circuit reversed a judgment on the precise Insurance Code violations urged by Defendants here, both because the carrier had a reasonable basis for its coverage position, and because there was no evidence of "tort injuries independent of the contract damages." *Id.* The court there cited *Provident American Ins. Co. v. Castaneda*, in which the Texas Supreme Court found that claims under the Texas Insurance Code for failure to investigate and communicate coverage positions failed, because such claims were not a basis for obtaining policy benefits, and there was no evidence that the carrier's conduct in handling the claim caused any injury independent of the denial of policy benefits. 988 S.W.2d at 198-99.

However, because there is insufficient evidence that Defendants suffered any injury independent of the denial of policy benefits, Admiral is entitled to summary judgment as a matter of law on Defendants' claims under Section 541.060(a)(4).

### 4. TEX. INS. CODE § 541.060(a)(2)(A) (unfair settlement practice)

Defendants allege a violation of TEX. INS. CODE § 541.060(a)(2)(A) (committing an unfair settlement practice by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear.") The duty to defend (which generally brings with it the

28

right to control the defense) also encompasses the duty to settle claims against the insured within policy limits, under certain circumstances. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007).

When the insurer denies coverage and refuses to defend its insured, the insurer bears the risk that, if coverage is subsequently established, it will be bound by a settlement or judgment against the insured. *See Comsys*, 130 S.W.3d at 191. Here, while the Court finds that Admiral has a duty to defend, the evidence does not establish as a matter of law that Admiral acted in bad faith or that liability was reasonably clear and made a deliberate effort to avoid a fair settlement of the claim. Therefore, summary judgment is inappropriate.

### 5. TEX. INS. CODE § 542.058 and 542.060 (unreasonably delaying payment of claim)

Defendants allege that Admiral violated TEX. INS. CODE §§ 542.058 and 542.060, so that Admiral is liable for statutory damages of 18% per annum and attorneys' fees if the Court determines Admiral's position was erroneous. These provisions apply to payments owed to an insured under a liability policy. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 19–20 (Tex. 2007); *Trammell Crow*, 643 F. Supp. 2d at 857–60; *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F. Supp. 2d 746, 750 (N.D. Tex. 2001) (Lynn, J.). Rejection or delayed payment of a claim is sufficient to trigger the statutory penalties of § 542.060, if the insurer's decision is subsequently determined to be erroneous. *See Great Am. Ins. Co. v. AFS/IBEX Fin. Servs.*, 612 F.3d 800, 806 (5th Cir. 2010) (where claim was not timely paid, court's determination that the loss was covered entitles insured to recover statutory interest and attorney's fees).

However, in the absence of sufficient evidence that Defendants suffered an independent injury, summary judgment on this claim is inappropriate. *See South Texas Medical Clinics, P.A. v. CNA Financial Corp.*, 2008 WL 450012 (S.D.Tex. Feb. 15, 2008) (holding that a plaintiff must establish independent actual damages in order to bring a § 541.060 claim); *see also Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 715 (S.D. Tex. 2013) (denying plaintiffs' claims because they did not identify competent evidence showing that they suffered an injury from the alleged § 541.060 violations independent from the allegedly wrongful denial of policy benefits).

### 6. Breach of Contract Claims

Defendants contend that Admiral's refusal to defend Petron against the claims asserted in the Oklahoma Lawsuit or to reimburse Petron for its fees and expenses incurred in defending against those claims constitutes a breach of Admiral's contractual obligations under the Policy. *See Trammell Crow*, 643 F. Supp. 2d at 856.

To establish a breach of contract under Texas law, Defendants must prove (1) the existence of a valid and enforceable contract, (2) that Defendants performed its duties under the contract, (3) that Admiral breached the contract, and (4) that Defendants suffered damages as a result of the breach. *See e.g., Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544–45 (5th Cir. 2003).

The parties do not dispute that the first two elements are satisfied. The Court's primary focus is on the remaining element: whether Admiral breached the insurance contract by failing to defend Petron and WPO in the Oklahoma Litigation. The Court holds above that Admiral had a duty to defend, and therefore breached the Policy. However, the fourth element of the breach of contract claim requires that Defendants

suffered damages as a result of Admiral's breach of the Policy. Although Defendants do not seek summary judgment on *the amount* of their damages, they must show that they suffered some damages to satisfy this element. *Trammell Crow*, 643 F. Supp. 2d at 856. The Court holds that Defendants failed to prove they suffered damages as a result of the alleged breach, and thus, as a matter of law, summary judgment is inappropriate .

Defendants argue the damages element of the breach of contract claim is satisfied by evidence that the insureds incurred defense costs in the underlying lawsuit that Admiral has not paid. *Defs.' App.* 261. According to Defendants, the alleged breach makes Admiral "responsible for the attorney's fees reasonably incurred" by the insured. *Hous. Auth. of Dallas v. Northland Ins. Co.*, 333 F. Supp. 2d 595, 602 (N.D. Tex. 2004) (Lindsay, J.). However, Defendants never attempt to show Admiral's lack of payments for a legal defense caused *increased* legal fees in the Oklahoma Litigation. *Defs.' App.* 250, 260. Similarly, Petron argues that Admiral's filing of the instant lawsuit caused Petron to retain attorneys to pursue its interests and defend against Admiral's claims, so pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8), Petron is entitled to recover from Admiral such reasonable fees and expenses, in addition to the amount of its claim. *See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) (answering certified question by Fifth Circuit). However, unless a breach of contract is determined to have occurred, an award of attorney's fees is not appropriate.

### VI. Conclusion

After considering the parties' arguments and the applicable law, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' Motion regarding the duty to defend is GRANTED. Their claims regarding

the duty to indemnify, breach of contract and violations of the Texas Insurance Code are

DENIED. Admiral's Motion for Summary Judgment is DENIED.


      **SO ORDERED**.

      October 31, 2013.

                                BARBARA M. G. LYNN
                                UNITED STATES DISTRICT JUDGE
                                NORTHERN DISTRICT OF TEXAS